UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 5190 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| WEXFORD HEALTH SOURCES, INC., SALEH OBAISI, TARRY WILLIAMS, MICHAEL MAGANA, MICHAEL LEMKE, LATONYA WILLIAMS, MEDICAL TECHNICIAN BOBBY, CYNDI GARCIA, ROYCE BROWN REED, DORETTA O'BRIEN, ASSISTANT WARDEN OF PROGRAMS CALLOWAY, UNKNOWN HEALTHCARE EMPLOYEES, UNKNOWN WEXFORD HEALTHSOURCES, INC. EMPLOYEES, NURSE JANE ROE, UNKNOWN ILLINOIS DEPARTMENT OF CORRECTIONS EMPLOYEES, CORRECTIONAL OFFICER GRIFFIN, CORRECTIONAL OFFICER JOHNSON, MAJOR MAGARVIE, LT. MALKOWSKI, SGT. TRALON DURRETT, CORRECTIONAL OFFICER JOHN DOE 1, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

After correctional officers allegedly stood by and allowed a fellow inmate to attack him and after then allegedly being denied appropriate medical treatment for the serious injuries suffered in the attack, Illinois Department of Corrections ("IDOC") inmate Terence Taylor filed this civil rights suit against numerous IDOC and Wexford Health Sources, Inc. ("Wexford") employees and various unknown individuals. Taylor alleges that Wexford, Saleh Obaisi, Tarry

Williams, Michael Magana, Michael Lemke, LaTanya Williams,[1] Medical Technician Bobby (identified as Naveen Nagpal),[2] Cyndi Garcia, Royce Brown Reed, Doretta O'Brien,[3] and Vincent Calloway (collectively, the "Medical Defendants") were deliberately indifferent to his serious medical needs and failed to intervene to prevent the denial of medical care in violation of the Eighth Amendment.[4] He also claims that Correctional Officer Griffin, Correctional Officer Johnson, Major Magarvie, Lt. Malkowski, and Sgt. Tralon Durrett failed to protect him from the other inmate's assault and failed to intervene in that assault, again in violation of the Eighth Amendment. Taylor additionally brings a state law claim against Obaisi, Ms. Williams, Nagpal, Magarvie, Malkowski, Durrett, and Johnson for intentional infliction of emotional distress ("IIED"), seeks to hold Wexford responsible for the unconstitutional acts of its employees pursuant to *respondeat superior*, and seeks indemnification for any judgment entered against the individually named IDOC Defendants.

Two sets of Defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6): Calloway, Durrett, Lemke, Malkowski, McGarvey, Magana, Nagpal, Brown Reed, Mr. Williams, and Griffin (collectively, the "IDOC Defendants") [60];[5] and Wexford, Ms.

---

[1] Taylor's First Amended Complaint spells Ms. Williams' first name "LaTonya" but her filings use the spelling "LaTanya." The Court will use the spelling used by Ms. Williams.

[2] An appearance and motion to dismiss have been filed on behalf of Naveen Nagpal, identified as a medical technician at Stateville. *See* Doc. 61 at 1. The waiver of service filed on the docket identifies Medical Technician Bobby as Naveen Nagpal, and so the Court will refer to Medical Technician Bobby herein as Nagpal. *See* Doc. 31.

[3] Doretta O'Brien was substituted as a Defendant for Darryl Edwards, who was originally named in the First Amended Complaint. *See* Docs. 57, 65. The docket does not reflect that O'Brien has been served.

[4] Taylor also names unknown IDOC and Wexford employees, John Doe, and Jane Roe Defendants in his claims. For ease of reading, the Court does not mention them in this Opinion.

[5] Taylor had also named Marcus Hardy as a Defendant but moved to voluntarily dismiss Hardy on January 22, 2016. *See* Doc. 55. The Court granted that motion on January 27, 2016. Doc. 65. To the extent Hardy has moved to dismiss the claims against him, *see* Doc. 60, that portion of the motion is

Williams, Obaisi, and Garcia (collectively, the "Wexford Defendants") [63]. Because the Wexford and IDOC Defendants are asking too much of Taylor at the pleading stage with respect to the denial of medical care, failure to intervene, and IIED claims, the Court denies their requests to dismiss these claims. But because Taylor has only pleaded in conclusory fashion Wexford's customs or policies regarding the denial of medical care, the Court dismisses the *Monell* claims against Wexford. And because Seventh Circuit precedent forecloses a *respondeat superior* claim under § 1983 against Wexford, the Court dismissed that claim as well. Finally, because Taylor's IIED claim at this stage appears to be dependent on his deliberate indifference claims, the Court cannot conclude that sovereign immunity bars that claim against the IDOC Defendants against whom the claim is brought, nor does sovereign immunity bar the indemnification claim, which merely seeks to enforce the State's obligations under its own law to indemnify its employees for any judgment entered against them.

## BACKGROUND[6]

On June 25, 2013, while Taylor was confined at Stateville Correctional Center ("Stateville"),[7] Griffin, a Stateville prison guard, handcuffed Taylor and took him to a shower room in Stateville's F-House. The shower room served as a holding area for inmates in transit to and from disciplinary hearings. While Taylor awaited his disciplinary hearing handcuffed,

---

moot. Griffin filed a motion to join the pending motion to dismiss as to Counts IV and VI, *see* Doc. 82, which the Court granted on March 29, 2016, *see* Doc. 84. Griffin is not named in the IIED claim that is challenged as Count IV, however, so the Court will only include him as part of the discussion as to the indemnification claim (Count VI).

[6] The facts in the background section are taken from Taylor's First Amended Complaint and are presumed true for the purpose of resolving the IDOC and Wexford Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

[7] Taylor is currently confined at Pontiac Correctional Center ("Pontiac"), where he has been located since April 5, 2014.

3

Johnson, another guard, unhandcuffed another inmate, Andrew McKissick. McKissick then attacked Taylor. Although Taylor attempted to flee to the shower, Griffin trapped him inside as Taylor tried to close the shower door. McKissick knocked Taylor to the ground and beat him unconscious. IDOC officers, including Magarvie, Malkowski, Johnson, Durrett, and Griffin, stood by and watched, doing nothing to stop the attack. These IDOC officers knew, however, that McKissick was a security risk, that McKissick was to remain handcuffed at all times outside his cell, and that Taylor and McKissick had a dispute between them.

When Taylor regained consciousness, he found himself surrounded by unknown IDOC officers being directed by Magarvie. Some of these officers had their knees and feet on Taylor's legs and back to keep him on the ground. Taylor complained that the officers were causing him additional pain. A health care worker at Stateville witnessed the attack, wrote a report, and referred Taylor to a nurse. But Taylor was only examined after his disciplinary hearing, at which point he was wiped off, given some pills, and sent back to his cell.

Over the next few days, Taylor found blood and dark liquid in his urine and experienced constant pain in his back and leg. He did not see a doctor again, however, despite repeated complaints to Nagpal, the medical technician. After approximately two months of making repeated complaints and filling out forms requesting to see a doctor, Taylor met with Ms. Williams, a physician assistant. Although Taylor complained of ongoing pain in both his back and leg, Ms. Williams indicated he could only be seen for one issue. Taylor focused on his back pain, receiving an x-ray of his back. He received no further treatment at Stateville, however. After Taylor was transferred to Pontiac in 2014, he received x-rays of his leg, which revealed a cracked bone in his right leg.

In addition to those individual Defendants already mentioned, Taylor has named other individuals as Defendants who work or previously worked for IDOC or Wexford, a private company that provides healthcare services for several IDOC prisons, including Stateville, pursuant to a contract with IDOC. Dr. Obaisi was a physician at Stateville, while Garcia was Stateville's Director of Nursing. Brown Reed was Stateville's Healthcare Unit Administrator. Mr. Williams, Magana, and Lemke were wardens at Stateville spanning the relevant time period. Finally, O'Brien and Calloway were Assistant Wardens of Programs at Stateville.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Denial of Medical Care (Count I)

Taylor alleges that the Medical Defendants denied him proper medical care in violation of the Eighth Amendment. To state a claim for deliberate indifference, Taylor must allege both

5

(1) an objectively serious medical condition and (2) that Defendants acted with deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). With respect to his claim against Wexford, Taylor must state facts indicating that Wexford maintained a policy or custom that violated his right to adequate medical care, which caused him harm. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (private contractors that provide medical services to prisoners are treated like municipalities for purposes of § 1983 claims). Defendants Calloway, Lemke, Magana, Brown-Reed, and Mr. Williams (the "IDOC Medical Defendants")[8] seek dismissal of this claim, arguing that Taylor has not included any allegations linking them to his failure to receive medical treatment. Wexford also seeks dismissal of this claim and the related failure to intervene claim, contending that Taylor has not adequately alleged a policy or custom. The Court addresses these arguments in turn.

A. **Individual Capacity Claims against IDOC Medical Defendants**

Each Defendant sued in his individual capacity under § 1983 must have been personally involved in the alleged constitutional deprivation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("In addition to the element of deliberate indifference, § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." (citations omitted)); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("[S]ome causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery."). A defendant may be personally liable "if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Gentry*, 65 F.3d at 561 (alterations in original) (citations omitted) (internal

---

[8] The IDOC Medical Defendants do not include Nagpal, who does not seek dismissal of the deliberate indifference or failure to intervene claims raised against him.

quotation marks omitted); *see also Palmer*, 327 F.3d at 594 ("Although direct participation is not necessary, there must at least be a showing that the [defendant] acquiesced in some demonstrable way in the alleged constitutional violation.").

Here, the IDOC Medical Defendants—Stateville administrators—would be unlikely to have direct involvement in or knowledge of specific medical decisions or situations relating to a specific inmate unless "of the gravest nature." *Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996); *see also Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981) (finding it "doubtful" that a prison warden would have personal involvement in the decision to delay treatment); *Foster v. Ghosh*, No. 11 C 5623, 2013 WL 3790905, at *4 (N.D. Ill. July 19, 2013) ("[The Warden] is not liable under the doctrine of deliberate indifference for simply serving in his administrative role at the Stateville Correctional Center."). Indeed, Taylor does not allege that they had a direct connection in denying him medical services. But where, as here, Taylor alleges systemic, as opposed to localized, violations of the denial of medical care, an inference may be drawn that the IDOC Medical Defendants, because of their positions as Stateville's wardens, healthcare unit administrator, and assistant wardens of programs, would have known of or participated in the alleged violations. *See Antonelli*, 81 F.3d at 1428–29 (allowing claims to proceed against prison administrators that involved "potentially systemic" and "not clearly localized" violations); *Duncan*, 644 F.2d at 655 (reversing dismissal of a hospital administrator from deliberate indifference claim because his position "justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct"); *Warren ex rel. Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) ("A senior jail official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or

7

participated in creating systemic inadequate conditions at the jail."). Thus, at this early stage in the litigation, it is premature to dismiss the claims brought against the IDOC Medical Defendants for lack of personal involvement.[9]

### B. *Monell* Claim against Wexford

Taylor also seeks to proceed against Wexford, which although a private company, may be held liable for deliberate indifference and failure to intervene pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (citation omitted) (internal quotation marks omitted).

Although *Monell* claims may proceed with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing. *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), and *Riley v. County of Cook*,

---

[9] In his response to the IDOC Medical Defendants' motion to dismiss, Taylor alternatively requests that his complaint be construed to include a claim against the IDOC Medical Defendants in their official capacities or that he be given leave to amend to include such a claim. But doing so would be futile. The Eleventh Amendment bars official capacity claims for monetary damages. *Brown v. Budz*, 398 F.3d 904, 917–18 (7th Cir. 2005). Although Taylor could seek injunctive relief against the IDOC Medical Defendants if they were sued in their official capacity, any such request for injunctive relief would be moot because Taylor is no longer housed at Stateville and the likelihood of his being transferred back there amounts to mere speculation. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988))).

8

682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Here, Taylor's allegations of Wexford's policies and practices are vague and broad, lacking in sufficient detail to put Wexford on notice of the claim against it. *See Mikolon v. City of Chicago*, No. 14 C 1852, 2014 WL 7005257, at *4–5 (N.D. Ill. Dec. 11, 2014) (dismissing *Monell* claims that contained "only boilerplate conclusions, not well-pleaded facts," noting that the claim "approaches too closely a claim that seeks to hold the City responsible for all official actions of its employees"). Instead of tying his injury to specific policies, Taylor has chosen to provide a laundry list of ten alleged policies maintained by Wexford. *See* Doc. 19 ¶ 53. Without additional facts to allow the Court to infer that these policies impacted the care Taylor received, they do not support a *Monell* claim against Wexford. *See Peacock v. Rigsby*, No. 15 C 1884, 2016 WL 1383232, at *3 (N.D. Ill. Apr. 7, 2016) (dismissing *Monell* claim against Wexford where plaintiff's "allegation of a cost-cutting policy is too speculative and untethered to his injury to support his claim"); *Johansen v. Curran*, No. 15 C 2376, 2015 WL 4978702, at *2 (N.D. Ill. Aug. 20, 2015) (dismissing *Monell* claims regarding denial of medical care where they were non-specific and conclusory).

Additionally, a plaintiff pursuing a widespread policy or practice claim generally must allege more than one or even three instances of misconduct. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (declining to adopt a "bright-line rule[ ]" but indicating that there must be "more than one instance, or even three" of wrongdoing (citation omitted) (internal quotation marks omitted)); *Armour*, 2014 WL 63850, at *6 ("[A] single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." (citation omitted)). This requirement is intended to "demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. Here, Taylor does not allege that any other detainee suffered from similar issues, only

including a conclusory reference to other prisoners' experiences at Stateville. *See* Doc. 19 ¶ 52 ("It is common at Stateville to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees."). Even the repeated ignorance of Taylor's own complaints does not make his allegations of a widespread custom or practice plausible. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (although it is "not impossible for a plaintiff to demonstrate the existence of an official policy of custom by presenting evidence limited to his experience . . . . it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event" (citations omitted) (internal quotation marks omitted)). Therefore, the Court dismisses Taylor's *Monell* claims against Wexford.

## II. Failure to Intervene with respect to Taylor's Medical Needs (Count II)

Taylor's failure to intervene claim is related to his deliberate indifference to his medical needs claim, as he alleges that the Medical Defendants knew of the other Medical Defendants' failures to provide medical care to him yet failed to intervene. Indeed, failure to intervene is merely a theory of liability, not a claim, to establish the liability of the Medical Defendants if they did not directly participate in the challenged failure to provide medical care yet can be shown to have been aware of the denial, to have had a realistic opportunity to prevent it, and to not have intervened to prevent the harm from occurring. *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *10 (N.D. Ill. Feb. 6, 2014); *see also Piercy v. Whiteside County, Ill.*, No. 14 CV 7398, 2016 WL 1719802, at *7 (N.D. Ill. Apr. 29, 2016) (to state a failure to intervene claim under § 1983, the plaintiff must allege that "[a] constitutional violation has been

10

committed by a [state actor]; *and* the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring" (alterations in original) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 744 (7th Cir. 2005))). The Wexford Defendants, in addition to the IDOC Medical Defendants, move to dismiss this claim. The Wexford Defendants argue that Taylor has failed to provide them with adequate notice of how they failed to intervene and whose actions they failed to stop, requesting additional evidence at the pleading stage.[10] The IDOC Medical Defendants repeat the arguments they raised in connection with Taylor's deliberate indifference claim, contending that Taylor has not sufficiently alleged their personal involvement in the alleged constitutional violation.

Both arguments fail. Although a more developed record may defeat Taylor's claim, at this stage, Taylor need not plead facts or provide evidence to support his allegations, as the Wexford Defendants request. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Plaintiffs need not lard their complaints with facts; the federal system uses notice pleading rather than fact pleading."); *Piercy*, 2016 WL 1719802, at *7 (allowing plaintiff to proceed on failure to intervene claim where plaintiff made allegations similar to those in this case). Additionally, claims for failure to intervene typically involve questions of fact for the jury, not appropriate for resolution at the motion to dismiss stage. *Miller v. City of Harvey*, No. 13 C 9257, 2014 WL 3509760, at *2 (N.D. Ill. July 15, 2014) (citing *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)). As for the IDOC Medical Defendants, the Court has already found that it would be premature to dismiss the deliberate indifference claims against them for lack of personal involvement where the complaint potentially alleges systemic, and not localized, constitutional violations. The same analysis applies to the failure to intervene claims.

---

[10] The Court has already addressed Wexford's argument that Taylor cannot proceed against it on this claim for failure to adequately plead a *Monell* claim above and so only addresses the arguments of the individual Wexford Defendants here.

*See Fields*, 2014 WL 477394, at *10 (finding it unnecessary to address failure to intervene arguments as the Court had already addressed defendants' arguments regarding personal involvement with respect to underlying claim).  Thus, the failure to intervene claim may proceed to discovery.

## III.     IIED Claim (Count IV)[11]

Under Illinois law, to state an IIED claim, Taylor must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)).  To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)).

Taylor brings his IIED claim against Obaisi, Ms. Williams, Nagpal, Magarvie, Malkowski, Durrett, and Johnson, contending that their actions in allowing Taylor to be attacked by a fellow inmate and then denying him medical treatment amount to extreme and outrageous conduct.  The Wexford and IDOC Defendants move to dismiss the IIED claim on separate grounds.

---

[11] The First Amended Complaint includes two claims labeled as Count IV, one for failure to intervene against Griffin, Magarvie, Malkowski, Durrett, and Johnson, and the other , the IIED claim challenged here.

12

A.  The Wexford Defendants[12]

First, the Wexford Defendants—Obaisi and Ms. Williams—argue that the Court should dismiss the IIED claim because Taylor has not identified any emotional distress caused by their conduct.  But Taylor alleges that he suffered severe emotional distress as a result of the Wexford Defendants' actions in denying him medical care, as detailed throughout the First Amended Complaint.  Courts have found that allegations sufficient to support deliberate indifference claims may also support an IIED claim under federal notice pleading standards.  *See Piercy*, 2016 WL 1719802, at *8 (allowing plaintiff to proceed on his IIED claim against Wexford defendants where he had stated a claim for deliberate indifference to his medical needs against them); *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 921 (C.D. Ill. 2009) (rejecting argument that plaintiffs did not sufficiently plead that they suffered severe emotional distress where their allegations of deliberate indifference allowed such an inference).  Additionally, Taylor alleges that he required additional medical treatment and had prolonged physical symptoms because of the Wexford Defendants' actions, which also suffices to meet this required pleading element. *See Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001) ("[W]hen the distress has manifested itself either through physical symptoms or has necessitated medical treatment, Illinois courts have been more inclined to characterize the emotional distress as severe.").  Thus, although Taylor may not ultimately establish that the Wexford Defendants' conduct caused severe emotional distress, he has met his pleading burden at this stage.

B.  The IDOC Defendants

Separately, the IDOC Defendants named in this claim—Nagpal, Magarvie, Malkowski, Durrett, and Johnson—argue that the IIED claim is barred by sovereign immunity.  Under the

---

[12] The Wexford Defendants also move to dismiss this claim as to Garcia, but she is not named as a Defendant as to this claim, as even the Wexford Defendants acknowledge.  *See* Doc. 63 at 4.

Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, the State of Illinois is generally immune from suit in any court except the Illinois Court of Claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). Taylor's IIED claim against the IDOC Defendants is considered a claim against the State and must be dismissed if the IDOC Defendants were "(1) acting within the scope of their authority, (2) performing a duty not owed to the public generally independent of state employment, and (3) engaged in matters ordinarily within that employee's normal and official functions." *Lovelace v. Yepsen*, No. 13 C 4299, 2016 WL 1660492, at *6 (N.D. Ill. Apr. 26, 2016).

Here, despite the fact that Taylor alleges throughout the First Amended Complaint that the IDOC Defendants acted within the scope of their employment, the Court need not accept this legal conclusion as true on a motion to dismiss. *See Cannon v. Burge*, No. 05 C 2192, 2006 WL 273544, at *17 n.14 (N.D. Ill. Feb. 2, 2006). Taylor also alleges, however, that the IDOC Defendants' actions "were rooted in an abuse of power or authority," Doc. 19 ¶ 89, at least raising a question of fact concerning whether they acted within the scope of their authority. More importantly, the sovereign immunity determination "does not depend simply upon whether the employee was acting within the scope of his employment when he committed the act in question" but rather "turns on the *source of the duty* with the breach of which the employee is charged." *Fritz v. Johnston*, 807 N.E.2d 461, 466, 209 Ill. 2d 302, 282 Ill. Dec. 837 (2004). Although the IDOC Defendants' duty to protect inmates, like Taylor, from harm "arises solely from their employment at IDOC, and the normal functions of IDOC employees include protecting inmates from bodily harm," *Johnson v. Winters*, No. 10 C 5480, 2013 WL 4029114, at *18 (N.D. Ill. Aug. 8, 2013), here Taylor bases his IIED claim on the IDOC Defendants' alleged constitutional violations in failing to protect him from harm and failing to provide him with

14

required medical care.[13] In such a case, "when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority" and the state law claim depends on the alleged constitutional violation, sovereign immunity does not apply. *Healy v. Vaupel*, 549 N.E.2d 1240, 1247, 133 Ill. 2d 295, 140 Ill. Dec. 368 (1990); *Liebich v. Hardy*, No. 11 C 5624, 2013 WL 4476132, at *11–12 (N.D. Ill. Aug. 19, 2013) (finding IIED claim against correctional officers not barred by sovereign immunity where it depended on plaintiff's alleged constitutional claim). Thus, at least at this stage, sovereign immunity does not bar Taylor's IIED claim against the IDOC Defendants named in the claim. *See Chatman v. City of Chicago*, No. 14 C 2945, 2015 WL 1090965, at *11 (N.D. Ill. Mar. 10, 2015) (refusing to dismiss state law claims as barred by sovereign immunity where plaintiff alleged that defendant violated state law and the Constitution); *Saunders v. City of Chicago*, No. 12-cv-09158, 2013 WL 6009933, at *12 (N.D. Ill. Nov. 13, 2013) (allowing plaintiff to proceed on his IIED claim where he alleged that defendants acted outside of state law and in violation of the Constitution).

## IV. *Respondeat Superior* Claim against Wexford (Count V)

Taylor seeks to hold Wexford vicariously liable under § 1983 for any unconstitutional acts of its employees. "*Respondeat superior* liability does not apply to private corporations under § 1983," however. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). While acknowledging this well-recognized principle, Taylor urges the Court to depart from it, allowing him to pursue such a claim against Wexford. Although the Seventh Circuit in *Shields* suggested that the issue "deserve[d] fresh consideration," it also clearly indicated that "it would take a decision by [the Seventh Circuit] sitting en banc or pursuant to Circuit Rule 40(e), or a decision by the Supreme Court to overrule those decisions" that hold that *respondeat superior* liability

---

[13] To the extent the IDOC Defendants argue in their reply that Taylor can establish his IIED claim without demonstrating that they committed a constitutional violation, the Court cannot resolve this factual question on a motion to dismiss.

does not apply here. *Id.*; *see also id.* at 795–96 (noting that "a new approach may be needed for whether corporations should be insulated from *respondeat superior* liability under § 1983," but deciding not to circulate an opinion to overrule prior decisions because the issue had not been raised). Instead, the Seventh Circuit reiterated that the prohibition on *respondeat superior* liability under § 1983 extends "from municipalities to private corporations." *Id.* at 796. Thus, this Court is not in a position to allow Taylor's *respondeat superior* claim to proceed, although Taylor may raise the issue on appeal if he so desires. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("[D]ecisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree."). Bound by precedent, the Court dismisses the *respondeat superior* claim with prejudice. *See Hahn v. Walsh*, 762 F.3d 617, 638–40 (7th Cir. 2014) (in dicta, noting that the extension of limitation on *respondeat superior* liability to private actors in § 1983 cases remains the law after *Shields*).

## V.     Indemnity Claim (Count VI)

Finally, the IDOC Defendants seek dismissal of Taylor's indemnification claim, arguing as with the IIED claim that it is barred by sovereign immunity because Taylor seeks to compel the State to pay any judgment entered against them. Although the Eleventh Amendment bars suits for monetary relief against the State, suits against state officials in their individual capacities are permissible as long as the State is not the "real, substantial party in interest." *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). Taylor does not seek any monetary relief directly from the State, having sued the IDOC Defendants only in their

individual capacities and the Court has already rejected the IDOC Defendants' sovereign immunity argument as to the IIED claim.

With his indemnification claim, Taylor merely seeks to enforce the State's obligations under state law to indemnify its employees for any judgment entered against them. *See* 5 Ill. Comp. Stat. 350/2. The "[S]tate's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign," however. *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991). Thus, sovereign immunity does not bar Taylor's claim. *See Wright v. Carter*, No. 14 C 9109, 2015 WL 4978688, at *6 (refusing to find that sovereign immunity barred indemnification claim where "Plaintiff merely explains . . . that the state is required by its own law to indemnify employees such as the IDOC defendants for any judgments that may be entered against them" where it was "clear that the individual defendants will be the ones directly liable for any money judgment").

## CONCLUSION

For the foregoing reasons, the Court denies the IDOC Defendants' motion to dismiss [60] and grants in part and denies in part the Wexford Defendants' motion to dismiss [63]. The Court dismisses without prejudice the § 1983 denial of medical care and failure to intervene claims against Wexford (Counts I and II) and dismisses with prejudice the *respondeat superior* claim against Wexford (Count V). Defendants are ordered to answer the remaining allegations of the First Amended Complaint by June 28, 2016.

Dated: June 13, 2016

                                                  SARA L. ELLIS
                                                  United States District Judge