IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-5190 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., SALEH | ) | Judge Ellis |
| OBAISI, TARRY WILLIAMS, MICHAEL | ) | |
| MAGANA,  MICHAEL LEMKE, LATONYA | ) | |
| WILLIAMS, NAVEEN NAGPAL, CYNDI | ) | |
| GARCIA, ROYCE BROWN REED, DORETTA | ) | |
| O'BRIEN, ASSISTANT WARDEN OF | ) | |
| PROGRAMS VICTOR CALLOWAY, | ) | |
| UNKNOWN HEALTHCARE EMPLOYEES, | ) | |
| UNKNOWN WEXFORD HEALTH SOURCES, | ) | |
| INC. EMPLOYEES, NURSE JANE ROE, | ) | |
| UNKNOWN ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS EMPLOYEES, | ) | |
| CORRECTIONAL OFFICER DOMINICK | ) | |
| GRIFFIN, CORRECTIONAL OFFICER | ) | |
| JOHNSON, MAJOR JENNY MAGARVIE, LT. | ) | |
| RANDY MALKOWSKI, SGT. TRALON | ) | |
| DURRETT, CORRECTIONAL OFFICER JOHN | ) | |
| DOE 1, GUY PIERCE, PONTIAC DIRECTOR | ) | |
| OF NURSING MEGHAN FOLEY,  PONTIAC | ) | JURY TRIAL DEMANDED |
| HEALTH CARE UNIT ADMINISTRATOR | ) | |
| MARY ELLEN GRENNAN, PONTIAC | ) | |
| ASSISTANT WARDEN OF PROGRAMS KIM | ) | |
| KELLEY, NURSE KRISI ESCHLEMAN, CMT | ) | |
| BECKY BUCZKOWSKI | ) | |

Defendants.

## SECOND AMENDED COMPLAINT

Plaintiff, TERENCE TAYLOR, by and through his attorneys, Loevy & Loevy,

complains of Defendants Wexford Health Sources, Inc., Saleh Obaisi, Tarry Williams,

Michael Magana, Michael Lemke, LaTonya Williams, Unknown Stateville Correctional Center Healthcare Unit Administrator, Naveen Nagpal, Unknown Healthcare Employees, Unknown Wexford Health Sources, Inc. Employees, Nurse Jane Roe, Dr. Tilden, Unknown Illinois Department of Corrections Employees, Correctional Officer Dominick Griffin, Correctional Officer Johnson, Major Jenny Magarvie, Lt. Randy Malkowski, Sgt. Tralon Durrett, Victor Calloway, Doretta O'Brien, Correctional Officer John Doe 1, Guy Pierce, Pontiac Director of Nursing Meghan Foley, Nurse Krisi Eschleman, CMT Becky Buczkowski, Pontiac Health Care Unit Administrator Mary Ellen Grennan, and Pontiac Assistant Warden of Programs Kim Kelley and states as follows:

## Introduction

1.      This is a 42 U.S.C. §1983 action to redress the deprivation of Mr. Taylor's rights guaranteed by the United States Constitution.

2.      On or about June 25, 2013, Mr. Taylor was in the custody of the Illinois Department of Corrections ("IDOC"), serving his time at Stateville Correctional Center. On or about that date, IDOC employees handcuffed Mr. Taylor behind his back and led him into a shower room that served as a holding area for inmates in transit. There, fellow inmate Andrew McKissick, then a Level-E prisoner, brutally attacked a defenseless Taylor, knocking him to the ground and beating and kicking him into unconsciousness. The Defendant Officers present allowed this attack to occur and failed to protect Mr. Taylor from McKissick, a known security risk.

3.     When Mr. Taylor regained consciousness after this vicious assault, he was in significant pain.  That pain was caused by McKissick's assault and exacerbated by certain Defendant Officers who were swarming him, driving their knees and feet into his legs and back despite his loud complaints of pain in those areas of his body.

4.     A person who, on information and belief, was a health care worker at Stateville, saw the attack, wrote a report, and referred Mr. Taylor to a nurse.  The Defendants' response to Mr. Taylor suffering this brutal attack was to provide a delayed exam in which he was wiped off, given some pills, and sent back to his cell.  During the following days, Mr. Taylor observed blood and dark liquid in his urine, and constant pain in his back and leg, but was never seen again by a doctor at Stateville.  Even after he was transferred to Pontiac Correctional Center, Mr. Taylor continued to complain but only received basic pain medication despite excruciating, and at times completely-debilitating pain.

5.     At both facilities, Mr. Taylor complained constantly about severe pain in his back and legs. Due to the severity of that attack, and the failure of Defendants to render any semblance of appropriate medical care within a reasonable time, Mr. Taylor has suffered ongoing pain and complications needlessly. When Mr. Taylor was finally allowed to see a doctor and get x-rays – well over a year after he was attacked and after he had been transferred to Pontiac – the doctor discovered significant injuries to Mr. Taylor's back and body, including a still-broken bone in Mr. Taylor's leg.  Even today, although pain medication at times lessens Mr. Taylor's pain, Mr. Taylor continues to be in pain. His leg gives out during regular activities like walking to his cell.   Mr. Taylor's

back is also in constant pain, and he cannot rest or sleep on his back. Despite those x-rays and complaints of pain in his back and legs, Defendants at Pontiac continued to provide nothing to Mr. Taylor other than basic pain medication. He did not receive a brace, crutches, rehabilitation, visits with a specialist, or even an exemption from being painfully cuffed behind his back when handcuffed.

6. Defendants denied Mr. Taylor appropriate medical treatment caused by their failure to protect him from an attack by another inmate. Their only response to his significant ongoing medical need was to provide him low-level pain management. Their failure to care for him caused Mr. Taylor tremendous ongoing pain and impairment that prevented him from performing even the simplest daily activities like walking or climbing stairs.

### Jurisdiction and Venue

7. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1367.

8. Venue is proper under 28 U.S.C. §1391(b). On information and belief, one or more defendants reside in this judicial district, and a substantial portion of the events giving rise to Plaintiff's claims occurred within this district. This Court is the appropriate pendent venue for the portions of Plaintiff's claims that did not occur in this district.

### Parties

9. Plaintiff Terence Taylor is in the custody of the Illinois Department of Corrections. Mr. Taylor was housed at Stateville Correctional Center at all times

relevant to the events at issue in this complaint. Mr. Taylor is currently housed at Pontiac Correctional Center, where he has been housed since on or about April 5, 2014.

10.     Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation headquartered in Pennsylvania, transacting business in Illinois. Pursuant to a contract with the State of Illinois, Wexford is the healthcare provider for several IDOC prisons throughout the State. At all times relevant to the events at issue in this complaint, Wexford was responsible for the implementation, oversight, and supervision of policies and practices at Stateville and the IDOC generally. As an agent of the IDOC, Wexford was at all times relevant to the events in this complaint acting under color of law by and through its lawful agents, including the individual defendants and other unknown healthcare employees at Stateville.

11.     At all times relevant to his involvement in this case, Defendant Saleh Obaisi was a physician at Stateville, an employee of and final policymaker for Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. Defendant Obaisi is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Obaisi was acting under color of law and within the scope of his employment.

12.     At all times relevant to his involvement in this case, Tarry Williams was the Warden at Stateville, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. Defendant Tarry Williams is sued here in his individual capacity. At all times relevant to

the events at issue in this case, Defendant Williams was acting under color of law and within the scope of his employment with the IDOC.

13.    At all times relevant to his involvement in this case, Defendant Michael Magana was the Warden at Stateville, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. Defendant Magana is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Magana was acting under color of law and within the scope of his employment with the IDOC.

14.    At all times relevant to his involvement in this case, Defendant Michael Lemke was the Warden at Stateville, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. Defendant Lemke is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Lemke was acting under color of law and within the scope of his employment with the IDOC.

15.    At all times relevant to her involvement in this case, Defendant LaTonya Williams was a Physician Assistant at Stateville, and an employee of Wexford or IDOC. At all times relevant to the events at issue in this case, Defendant Latonya Williams was acting under color of law and within the scope of her employment.

16.    At all times relevant to his involvement in this case, Defendant Naveen Nagpal (known to Plaintiff as "MedTech Bobby") was a medical technician at Stateville, and an employee of either the IDOC or Wexford. Defendant Nagpal is sued here in his

individual capacity. At all times relevant to the events at issue in this case, Defendant Nagpal was acting under color of law and within the scope of his employment.

17. At all times relevant to her involvement in this case, Defendant Cyndi Garcia was the Director of Nursing at Stateville, and an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. Defendant Garcia is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Garcia was acting under color of law and within the scope of her employment.

18. At all times relevant to her involvement in this case, Defendant Royce Brown Reed was the Healthcare Unit Administrator at Stateville, an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. At all times relevant to the events at issue in this case, Defendant Brown Reed was acting under color of law and within the scope of her employment.

19. At all times relevant to her involvement in this case, including from approximately 2012 through 2014, Defendant Doretta O'Brien was the Assistant Warden of Programs at Stateville, an employee of IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville. Defendant O'Brien is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant O'Brien was acting under color of law and within the scope of her employment with the IDOC.

20.     At all times relevant to his involvement in this case, including from approximately 2014 to July of 2015, Defendant Victor Calloway was the Assistant Warden of Programs at Stateville Correction Center, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville.  Defendant Calloway is sued here in his or her individual capacity.  At all times relevant to the events at issue in this case, Defendant Calloway was acting under color of law and within the scope of his or her employment with the IDOC.

21.     At all times relevant to their involvement in this case, Defendant Unknown Healthcare Employees were healthcare personnel at Stateville and/or Pontiac, and employees of either Wexford or IDOC. At all times relevant to the events at issue in this case, Defendant Unknown Healthcare Employees were acting under color of law and within the scope of their employment.

22.     At all times relevant to their involvement in this case, Defendant Unknown Wexford Employees were personnel at Stateville and/or Pontiac, and employees of Wexford. At all times relevant to the events at issue in this case, Defendant Unknown Wexford Employees were acting under color of law and within the scope of their employment.

23.     At all times relevant to his involvement in this case, Defendant Nurse Jane Roe was a Registered Nurse at Stateville, and an employee of Wexford or IDOC. Defendant Nurse Roe is sued here in her individual capacity. At all times relevant to the events at issue in this  case, Defendant Nurse Roe was acting under color of law and within the scope of her employment with Wexford or the IDOC.

24.     At all times relevant to their involvement in this case, Defendant Unknown IDOC Employees were prison guards or personnel at Stateville and/or Pontiac, and employees of IDOC. At all times relevant to the events at issue in this case, Defendant Unknown IDOC Employees were acting under color of law and within the scope of their employment.

25.     At all times relevant to his involvement in this case, Correctional Officer Dominick Griffin was a prison guard at Stateville, and an employee of the IDOC. Officer Griffin is sued here in his individual capacity. At all times relevant to the events at issue in this  case, Officer Griffin was acting under color of law and within the scope of his employment with the IDOC.

26.     At all times relevant to his involvement in this case, Correctional Officer Johnson was a prison guard at Stateville, and an employee of the IDOC. Officer Johnson is sued here in his individual capacity. At all times relevant to the events at issue in this case, Officer Johnson was acting under color of law and within the scope of his employment with the IDOC.

27.     At all times relevant to his involvement in this case, Major Jenny Magarvie was a prison guard at Stateville, and an employee of the IDOC. Major Magarvie is sued here in her individual capacity. At all times relevant to the events at issue in this  case, Major Magarvie was acting under color of law and within the scope of her employment with the IDOC.

28.     At all times relevant to this case, Lt. Randy Malkowski was a prison guard at Stateville, and an employee of the IDOC. Lt. Malkowski is sued here in his individual

capacity. At all times relevant to the events at issue in this case, Lt. Malkowski was acting under color of law and within the scope of his employment with the IDOC.

29. At all times relevant to his involvement in this case, Sgt. Tralon Durrett was a prison guard at Stateville, and an employee of the IDOC. Sgt. Durrett is sued here in his individual capacity. At all times relevant to the events at issue in this case, Sgt. Durrett was acting under color of law and within the scope of his employment with the IDOC.

30. At all times relevant to his involvement in this case, John Doe 1 was a prison guard or a medical professional at Stateville, and an employee of either IDOC or Wexford. John Doe 1 is sued here in his individual capacity. At all times relevant to the events at issue in this case, John Doe 1 was acting under color of law and within the scope of his employment with either the IDOC or Wexford.

31. At all times relevant to his involvement in this case, Defendant Guy Pierce was the warden at Pontiac, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac. Defendant Pierce is sued here in his individual and official capacity. At all times relevant to the events at issue in this case, Defendant Pierce was acting under color of law and within the scope of his employment with the IDOC.

32. At all times relevant to this complaint, Defendant Pontiac Director of Nursing Meghan Foley was an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices

at Pontiac. At all times relevant to the events at issue in this case, Defendant Foley was acting under color of law and within the scope of her employment.

33.     At all times relevant to this complaint, Defendant Pontiac Healthcare Unit Administrator Mary Ellen Grennan was an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac. At all times relevant to the events at issue in this case, Defendant Grennan was acting under color of law and within the scope of her employment.

34.     At all times relevant to this complaint, Defendant Pontiac Assistant Warden of Programs Kim Kelley was an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac. At all times relevant to the events at issue in this case, Defendant Kelley was acting under color of law and within the scope of her employment.

35.     At all times relevant to this complaint, Defendant Nurse Krisi Eschleman was an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac. At all times relevant to the events at issue in this case, Defendant Eschleman was acting under the color of law and within the scope of her employment.

36.     At all times relevant to this complaint, Defendant CMT Becky Buczkowski was an employee of either the IDOC or Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Pontiac. At all times relevant to the events at issue in this case, Defendant Buczkowski was acting under the color of law and within the scope of her employment.

37. Collectively, Defendants Wexford, Obaisi, Tarry Williams, Magana, Lemke, Latonya Williams, Nagpal, Garcia, Reed, O'Brien, Calloway, Roe, John Doe 1, Foley, Grennan, Kelley, Eschleman, Buczkowski, and Unknown Healthcare Employees and Unknown Wexford Health Sources, Inc. are referred to herein as the "Medical Defendants."

## Factual Allegations

38. On or about the morning of June 25, 2013, Terence Taylor was handcuffed and led from his cell by Officer Griffin to a shower room in Stateville F-House. Stateville authorities used the shower room as a holding cell for inmates going to and from disciplinary hearings. Mr. Taylor was going to have a hearing about a minor disciplinary ticket. While Officer Griffin walked him to the shower room, Mr. Taylor saw that McKissick was already in the shower room. McKissick asked Defendant Officer Johnson to unlock his handcuffs so that he could attack Taylor. On information and belief, Mr. Taylor then saw Officer Johnson unlock McKissick's handcuffs. On information and belief, Major Magarvie, Lt. Malkowski, Sgt. Durrett, and Officer Griffin were all present and observed Defendant Johnson unlocking McKissick's handcuffs.

39. Defendants Griffin, Johnson, Magarvie, Malkowski, Durrett, and Officer John Doe 1 knew that there was a dispute between Taylor and McKissick. They also knew that McKissick was a member of the Vice Lords gang. Finally, they also knew that McKissick was a Level-E prisoner, meaning that he was considered to be a high-security risk to both prisoners and guards, and that he must be kept handcuffed at all

times outside of his cell.  Despite knowing of the general and specific risks that McKissick posed to Mr. Taylor, Correctional Officer Johnson allowed McKissick to free his left hand from his handcuffs and attack Mr. Taylor.

40.     Once Officer Johnson allowed McKissick's left hand to become free from his handcuffs, McKissick accosted Mr. Taylor.  He beat Mr. Taylor with his fists, his face, and with the loose handcuff bracelet dangling from his right wrist.  Mr. Taylor, defenseless with his own hands handcuffed behind his back, attempted to flee the shower, only to find that Correctional Officer Griffin (first name unknown at this time) was trying to close the door to the shower, trapping him inside before he could flee. Mr. Taylor made it to the threshold of the shower room before he was beaten and stomped into unconsciousness. When he came to, he found Unknown Illinois Department of Corrections Employees swarming on top of him, driving their knees and feet into his legs and back, despite his loud complaints of pain in those areas. Defendant Magarvie was directing those officers to hold down Mr. Taylor.  Mr. Taylor told Defendants that they were hurting his back and his leg, but they did not stop their attack.  The actions of these Unknown Defendants exacerbated Mr. Taylor's injuries from McKissick's attack.

41.     A person Mr. Taylor believes to be medical personnel, John Doe 1, was present at the time of the attack. This person told Mr. Taylor that he saw what happened to him.  This person saw Mr. Taylor immediately after the attack, wrote a report, and recommended Mr. Taylor see the nurse. That person did not conduct a medical exam or assess Mr. Taylor's injuries.

42.     Despite the recommendation that Mr. Taylor see the nurse, he was first made to stand and hear his minor disciplinary ticket. Mr. Taylor's ticket was dismissed and he received no disciplinary action.

43.     Mr. Taylor was then taken to Nurse Jane Roe. Despite Mr. Taylor telling her what happened to him,  Nurse Roe also failed to conduct any sort of medical assessment of Mr. Taylor, and merely wiped the blood off his face. After he complained of extreme pain, Nurse Roe gave Mr. Taylor a few unidentified pills and sent him back to his cell.

44.     The night of the attack, Mr. Taylor observed dark liquid and blood in his urine. Mr. Taylor continued to languish in agony, but was provided no more pain medication or medical intervention of any sort for several days.

45.     Mr. Taylor complained frequently of pain in his back and leg to anyone who came by. Notably, he repeatedly asked Defendant Nagpal to arrange for him to see a doctor or nurse right away. On multiple occasions, Mr. Taylor filled out forms requesting to see a doctor, and gave them to Defendant Nagpal. During this time and continuing to the present day, Mr. Taylor was experiencing great difficulty with regular functions of daily life, like walking or exercising.

46.     Finally, after about two months of complaining multiple times each day, and with no abatement of his pain, Mr. Taylor saw a person known to him as "Dr. Williams," who Mr. Taylor described as a black female. On information and belief, Dr. Williams is Physician Assistant LaTonya Williams. Mr. Taylor told Defendant Williams about his ongoing pain in his back and leg.  Defendant Williams told Mr. Taylor that he

could only be seen for one issue at a time, so Mr. Taylor opted to be seen for his continuing back pain.

47.     Dr. Williams ordered an x-ray of Mr. Taylor's back, but after receiving the x-ray results did not provide Mr. Taylor with any explanation or treatment for his back. Dr. Williams did not treat Mr. Taylor's leg, and did not order any subsequent imaging or tests for his back. Despite no abatement of his pain, and Mr. Taylor's continued complaint to Stateville's medical staff about his injuries, Mr. Taylor did not see another doctor during any of the rest of his time in Stateville.

48.     Nearly a year later, on or about April 5, 2014, Mr. Taylor was transferred from Stateville to Pontiac.  While at Pontiac, Mr. Taylor continued to suffer excruciating pain.  At the time, his pain was so bad that he was unable to get out of bed, much less walk.  Mr. Taylor complained numerous times to various people at Pontiac including, upon information and belief, Defendants.  Although he saw medical staff several times and complained about his excruciating pain, including his belief that his leg felt broken, the only treatment he received was low-level pain medication.

49.     After some time in Pontiac, Mr. Taylor was finally given an x-ray on his leg. That x-ray showed that Mr. Taylor has a cracked bone in his right leg, in the same place where a guard had driven his knee a year and a half earlier after Mr. Taylor had just been beaten unconscious by Prisoner McKissick.

50.     Even after the diagnosis that his leg was broken, Mr. Taylor has only received pain medication.  Defendants have refused to provide him any other treatment, including access to an orthopedist or a strategy for truly managing his pain.

51.     From the time Mr. Taylor was injured to the present, he had not received any care for his back or leg other than a limited amount of pain medication. This is directly attributable to Defendants' deliberate indifference to his objectively serious medical needs, and has forced Mr. Taylor to suffer unnecessary agonizing pain and impairment in even his daily activities.

## CLAIMS

### COUNT I
### 42 U.S.C. § 1983 – Denial of Medical Care (Eighth Amendment)
### All Medical Defendants

52.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

53.     As described more fully above, the Medical Defendants had notice of Mr. Taylor's medical needs and the seriousness of his medical needs, and knew the risk of harm to Mr. Taylor if he did not receive appropriate medical care.  Despite that knowledge, The Medical Defendants failed to provide him with any proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

54.     As a result of the Medical Defendants' unjustified and unconstitutional conduct, Mr. Taylor experienced pain, suffering, emotional distress, and injury.

55.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Taylor's rights.

56. Alternatively, Defendants were deliberately indifferent to Mr. Taylor's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Taylor's rights.

57. Mr. Taylor's injuries were proximately caused by policies and practices of the Medical Defendants.

58. At all times relevant to the events at issue in this case, Defendant Wexford contracted with the IDOC to provide healthcare to men housed at Stateville and Pontiac, including Mr. Taylor. As the provider of healthcare services to prisoners incarcerated at Stateville and other IDOC facilities, Wexford was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to prisoners in IDOC custody.

59. Prior to the events giving rise to Plaintiff's Complaint, Defendant Wexford had notice of widespread policies and practices by healthcare and correctional employees at Stateville and Pontiac pursuant to which prisoners like Mr. Taylor with serious medical needs were routinely denied medical care and access to medical care. It is common at Stateville to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees. Despite knowledge of these problematic policies and practices, Defendant Wexford did nothing to ensure that prisoners at Stateville and Pontiac received adequate medical care and access to medical care, thereby acting with deliberate indifference.

60.     Specifically, there exist widespread policies or practices at Stateville and Pontiac pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which: (1) healthcare personnel commonly fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) healthcare personnel commonly fail to perform adequate examinations of prisoners with a serious medical condition; (4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner; (5) healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care; (6) healthcare personnel fail to provide timely healthcare to prisoners; (7) healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need; (8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; (9) healthcare personnel fail to follow up on inconclusive tests, or to follow up once an inmate complains that the care provided by the healthcare personnel is inadequate or having no effect; and (10) inadequate levels of health care staffing are maintained.

61.     These widespread policies and practices were allowed to flourish because Defendant Wexford, which directs the provision of healthcare services at Stateville and Pontiac, directly encouraged the very type of misconduct at issue in this case, failed to

provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Wexford violated Mr. Taylor's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

62.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Stateville and Pontiac, were able to exist and thrive because Defendant Wexford was deliberately indifferent to the problem, thereby effectively ratifying it.

63.     At all times relevant to their involvement in this case, Defendants Obaisi, Tarry Williams, Michael Magana, Latonya Williams, Cyndi Garcia, Royce Brown Reed, Doretta O'Brien, Victor Calloway, John Doe 1, Guy Pierce, Defendant Pontiac Director of Nursing Meghan Foley, Defendant Pontiac Assistant Warden of Programs Mary Ellen Grennan, Defendant Pontiac Healthcare Unit Administrator Kim Kelley, Nurse Krisi Eschleman, CMT Becky Buczkowski, and Unknown Healthcare Employees and Unknown Wexford Employees were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care at Stateville and Pontiac; the training of IDOC and Wexford staff at Stateville and Pontiac on providing medical care to prisoners, and providing prisoners access to medical care; and the supervision of IDOC and Wexford staff at Stateville and Pontiac who provided medical care and were responsible for providing prisoners access to medical care.

64.     Prior to the events giving rise to Plaintiff's Complaint, Defendants Obaisi, Tarry Williams, Michael Magana, Latonya Williams, Cyndi Garcia, Royce Brown Reed, Doretta O'Brien, Victor Calloway, John Doe 1, Guy Pierce, Defendant Pontiac Director of Nursing Meghan Foley, Defendant Pontiac Assistant Warden of Programs Kim Kelley, Defendant Pontiac Healthcare Unit Administrator Mary Ellen Grennan, Nurse Krisi Eschleman, CMT Becky Buczkowski, and Unknown Healthcare Employees and Unknown Wexford Employees had notice of the widespread policies and practices described in Paragraph 59 by healthcare and correctional employees at Stateville and Pontiac pursuant to which prisoners like Mr. Taylor with serious medical needs were routinely denied medical care and access to medical care.  It is common at Stateville and Pontiac to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by healthcare and correctional employees.  Despite knowledge of these problematic policies and practices, Defendants did nothing to ensure that prisoners at Stateville and Pontiac received adequate medical care and access to medical care, thereby acting with deliberate indifference.

65.     These widespread policies and practices were allowed to flourish because Defendants Obaisi, Tarry Williams, Michael Magana, Latonya Williams, Cyndi Garcia, Royce Brown Reed, Doretta O'Brien, Victor Calloway, John Doe 1, Guy Pierce, Meghan Foley, Kim Kelley, Mary Ellen Grennan, Krisi Eschleman, Becky Buczkowski, and Unknown Healthcare Employees and Unknown Wexford Employees who oversaw the provision of healthcare to prisoners at Stateville and Pontiac and were responsible for

ensuring that prisoners have access to medical care, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct.  In this way, Defendants Obaisi, Tarry Williams, Michael Magana, Latonya Williams, Cyndi Garcia, Royce Brown Reed, Doretta O'Brien, Victor Calloway, John Doe 1, Guy Pierce, Megan Foley, Kim Kelley, Mary Ellen Grennan, Krisi Eschleman, Becky Buczkowski, and Unknown Healthcare Employees and Unknown Wexford Employees violated Mr. Taylor's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

66.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Stateville and Pontiac, were able to exist and thrive because Defendants Obaisi, Tarry Williams, Michael Magana, Latonya Williams, Cyndi Garcia, Royce Brown Reed, Doretta O'Brien, Victor Calloway, John Doe 1, Guy Pierce, Meghan Foley, Kim Kelley, Mary Ellen Grennan, Krisi Eschleman, Becky Buczkowski, and Unknown Healthcare Employees and Unknown Wexford Employees were deliberately indifferent to the problem, thereby effectively ratifying it.

67.     At all times relevant to their involvement in this case, Defendants Williams, Magana, and Lemke were Wardens at Stateville, and Defendants Pierce and Defendant Kelley were Wardens at Pontiac.  All were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding access to medical care for prisoners at Stateville and Pontiac, respectively; the

training of IDOC staff at Stateville and Pontiac, respectively, on ensuring access to medical care for prisoners, and the supervision of IDOC staff at Stateville and Pontiac, respectively, who provided medical care and were responsible for providing prisoners access to medical care.

68.     Prior to the events giving rise to Plaintiff's Complaint, Defendants Williams, Magana, Lemke, Pierce and Kelley had notice of widespread policies and practices by correctional employees at Stateville pursuant to which prisoners like Mr. Taylor with serious medical needs were routinely denied medical care and access to medical care. It is common at Stateville and Pontiac to see prisoners with clear symptoms of serious medical needs who repeatedly request medical evaluation or treatment, and whose requests are routinely delayed or completely ignored by correctional employees.  Despite knowledge of these problematic policies and practices, Defendants did nothing to ensure that prisoners at Stateville and Pontiac received adequate medical care and access to medical care, thereby acting with deliberate indifference.

69.     Specifically, there exist widespread policies or practices at Stateville and Pontiac pursuant to which prisoners receive unconstitutionally inadequate access to healthcare, including policies and practices pursuant to which: (1) healthcare personnel commonly fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (2) healthcare personnel commonly fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (3) healthcare personnel commonly fail to perform

adequate examinations of prisoners with a serious medical condition; (4) healthcare personnel commonly fail to review a prisoner's pertinent medical records before, during, or after an examination or diagnosis of the prisoner; (5) healthcare personnel with inadequate training, qualifications, and experience are charged with the responsibility of screening and evaluating prisoner complaints and requests for medical care; (6) healthcare personnel fail to provide timely healthcare to prisoners; (7) healthcare personnel fail to respond adequately or timely to diagnostic testing which reveals a serious medical need; (8) healthcare personnel fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; (9) healthcare personnel fail to follow up on inconclusive tests, or to follow up once an inmate complains that the care provided by the healthcare personnel is inadequate or having no effect; and (10) inadequate levels of health care staffing are maintained.

70.     These widespread policies and practices were allowed to flourish because Defendants Williams, Magana, Lemke, Pierce and Kelley, who oversaw the supervision of correctional personnel at Stateville and Pontiac, respectively, and were responsible for ensuring that correctional personnel provide prisoners access to medical care, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct.  In this way, Defendants Williams, Magana, Lemke, Pierce and Kelley violated Mr. Taylor's rights by

maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

71.     The above-described widespread policies and practices, so well settled as to constitute de facto policy at Stateville and Pontiac, were able to exist and thrive because Defendants Williams, Magana, Lemke, Pierce and Kelley were deliberately indifferent to the problem, thereby effectively ratifying it.

72.     Mr. Taylor's injuries were caused by employees of IDOC and Wexford, including but not limited to the individually named Medical Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described above.

73.     Defendants Obaisi, Tarry Williams, Michael Magana, Michael Lemke, Cyndi Garcia, Royce Brown Reed, Doretta O'Brien, Victor Calloway, Guy Pierce, Pontiac Assistant Warden of Programs Kim Kelley, Pontiac Director of Nursing Meghan Foley, Pontiac Healthcare Unit Administrator Mary Ellen Grennan, Nurse Krisi Eschleman, CMT Becky Buczkowski, and Unknown Healthcare Employees, and Unknown Wexford Health Sources Inc. Employees, were supervisors to other Defendants, knew of the misconduct of other Defendants in failing to provide medical care to Mr. Taylor, and nevertheless condoned the denial of medical care or turned a blind eye to the other Defendants' failure to provide medical care to Mr. Taylor.

74.     As a result of Defendants' unjustified and unconstitutional conduct, Mr. Taylor experienced pain, suffering, emotional distress, and injury.

**COUNT II**
**42 U.S.C. § 1983 – FAILURE TO INTERVENE (EIGHTH AMENDMENT)**
**MEDICAL DEFENDANTS**

75.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

76.     As described more fully above, the Medical Defendants had a reasonable opportunity to prevent the violation of Mr. Taylor's constitutional rights as set forth above had they been so inclined, but failed to do so.

77.     The Medical Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Mr. Taylor's rights.

78.     As a direct and proximate result of Defendants' misconduct, Mr. Taylor's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

79.     Mr. Taylor's injuries were caused by employees of the IDOC and Wexford, including but not limited to the individually named Medical Defendants, who acted pursuant to the policies and practices described more fully above.

**COUNT III**
**42 U.S.C. § 1983 – Failure to Protect (Eighth Amendment)**
**Defendants Griffin, John Doe 1, Major Magarvie, Lt. Malkowski, Sgt. Durrett and
Officer Johnson,  and Unknown Illinois Department of Corrections Employees**

80.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

81.     As described more fully above, Defendants Unknown Illinois Department of Corrections Employees, Correctional Officer Griffin, Correctional Officer John Doe 1,

Sgt. Durrett, Major Magarvie, Lt. Malkowski, and Officer Johnson were deliberately indifferent to the serious risk that Mr. Taylor would be subject to assault by Anthony McKissick, due to McKissick's high security threat level, McKissick's hand being freed from his handcuff, McKissick's statement that he wanted to harm Mr. Taylor, Mr. Taylor's inability to protect himself because he was handcuffed behind his back, and the known animus between McKissick and Mr. Taylor.

82. Each of Defendants Unknown Illinois Department of Corrections Employees, Correctional Officer Griffin, Correctional Officer John Doe 1, Sgt. Durrett, Major Magarvie, Lt. Malkowski, and Officer Johnson knew that Plaintiff suffered an imminent risk of harm.

83. Despite this knowledge, Unknown Illinois Department of Corrections Employees, Correctional Officer Griffin, Correctional Officer John Doe 1, Sgt. Durrett, Major Magarvie, Lt. Malkowski, and Officer Johnson, individually and collectively, failed to protect Mr. Taylor from predictable and preventable harm at the hands of another inmate in Stateville. Each of these Defendants could have acted to prevent the harm to Mr. Taylor, but failed to do so.

84. Defendants John Doe 1, Major Magarvie, Lt. Malkowski, and Sgt. Durrett were supervisors to other Defendants, knew of the misconduct of other Defendants in failing to provide medical care to Mr. Taylor, and nevertheless condoned the denial of medical care or turned a blind eye to the other Defendants' failure to provide medical care to Mr. Taylor.

85. This failure to protect Mr. Taylor constitutes deliberate indifference to Mr. Taylor's safety and rights. This deliberate indifference violates Mr. Taylor's rights under the Eighth Amendment of the United States Constitution.

86. As a result of Defendants' unjustified and unconstitutional conduct, Mr. Taylor experienced pain, suffering, emotional distress, and injury.

**COUNT IV**
**42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)**
**Defendants Griffin, John Doe 1, Major Magarvie, Lt. Malkowski, Sgt. Durrett and Officer Johnson, and Unknown Illinois Department of Corrections Employees**

87. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

88. As described more fully above, Defendants Griffin, John Doe 1, Major Magarvie, Lt. Malkowski, Sgt. Durrett and Officer Johnson, and Unknown Illinois Department of Corrections Employees had a reasonable opportunity to prevent the violation of Mr. Taylor's constitutional rights as set forth above had they been so inclined, but failed to do so.

89. These Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Mr. Taylor's rights.

90. As a direct and proximate result of Defendants' misconduct, Mr. Taylor's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

91.     Mr. Taylor's injuries were caused in part by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

92.     Defendants failed to intervene despite their clear knowledge of the immediate harm likely to befall Mr. Taylor as a result of their actions when they placed him in an enclosed area with a dangerous prisoner who had been freed from his handcuffs by an individual defendant.

93.     As a result of Defendants' unjustified and unconstitutional conduct, Mr. Taylor experienced pain, suffering, emotional distress, and injury.

**COUNT IV**
**Intentional Infliction of Emotional Distress**
**Defendants Saleh Obaisi, Latonya Williams, Naveen Nagpal, Nurse Jane Roe, John Doe 1, Major Magarvie, Lt. Malkowski, Sgt. Durrett and Officer Johnson, and Unknown Illinois Department of Corrections Employees, Unknown Healthcare Employees and Unknown Wexford Health Sources, Inc. Employees**

94.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

95.     In the manner described more fully above, by deliberately allowing Mr. Taylor to be attacked and beaten unconscious by a fellow inmate, and by denying Mr. Taylor medical evaluation or treatment or access to medical evaluation or treatment, Defendants Saleh Obaisi, Latonya Williams, Naveen Nagpal, Nurse Jane Roe, John Doe 1, Major Magarvie, Lt. Malkowski, Sgt. Durrett and Officer Johnson, Unknown Illinois Department of Corrections Employees, Unknown Healthcare Employees

and Unknown Wexford Health Sources, Inc. Employees engaged in extreme and outrageous conduct.

96.    Defendants' actions as set forth above were rooted in an abuse of power or authority.

97.    Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

98.    Defendants' actions, as set forth above, were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Taylor's rights.

99.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employer, Wexford, is liable for their actions.

100.    As a direct and proximate result of this misconduct, Mr. Taylor experienced injuries—including severe emotional distress—and suffering.

## COUNT V
### Respondeat Superior
### Wexford

101.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

102.    Defendant Wexford, as a private corporation acting under color of state law, should be held vicariously liable under 42 U.S.C. § 1983 for the unconstitutional conduct of its employees acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793–95 (7th Cir. 2014).

## COUNT VI
## Indemnification

103.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

104.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

105.     One or more Defendants are or were employees of the IDOC and acted within the scope of their employment in committing the misconduct described above.

106.    The State of Illinois is obligated to pay any judgment entered against individual Defendants within the scope of their employment for IDOC.

Wherefore, Plaintiff Terence Taylor respectfully requests that this Court enter a judgment in his favor and against Defendants Saleh Obaisi, Tarry Williams, Michael Magana,  Michael Lemke,  LaTonya Williams, Unknown Stateville Correctional Center Healthcare Unit Administrator, Naveen Nagpal, Unknown Healthcare Employees, Nurse Jane Roe, Unknown Illinois Department of Corrections Employees, Correctional Officer Dominick Griffin, Correctional Officer Johnson, Major Jenny Magarvie, Lt. Randy Malkowski, Sgt. Tralon Durrett, and Correctional Officer John Doe 1, Guy Pierce, Pontiac Director of Nursing Meghan Foley, Pontiac Healthcare Unit Administrator Mary Ellen Grennan, Pontiac Assistant Warden of Programs Kim Kelley, Nurse Krisi Eschleman, and CMT Becky Buczkowski, awarding compensatory damages, punitive

damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Terence Taylor hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: June 17, 2016

Respectfully submitted,

/s/ Tara Thompson
Tara Thompson
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Tara Thompson, an attorney, hereby certify that on June 17, 2016, I caused to be served the foregoing Second Amended Complaint on all counsel of record via the Court's electronic filing system.

Respectfully Submitted,

/s/ Tara Thompson
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Tara Thompson
LOEVY & LOEVY
311 N Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900