IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE TAYLOR, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 15-CV-5190 |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) ) | Judge Ellis |
| Defendants. | ) ) ) ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

Plaintiff, TERENCE TAYLOR, by and through his attorneys, Loevy & Loevy, hereby respectfully submits this response in opposition to Defendants' motion to transfer venue to the Central District of Illinois (Dckt. No. 109). As was true when this Court granted Mr. Taylor leave to file his second amended complaint, the bulk of the allegations in this case relate to events at Stateville Correctional Center, and so venue is proper in the Northern District of Illinois. Further, in the interests of judicial economy this Court should not sever Mr. Taylor's claims, but should allow this case to continue in one suit. In support of his opposition, Plaintiff states as follows:

**Factual Background**

1. Mr. Taylor originally filed a *pro se* complaint in this case raising claims related to an incident that occurred while he was an inmate at Stateville Correctional Center on June 25, 2013 (Dckt. No. 1). He alleged in that complaint that on that date, he was attacked by a fellow inmate after certain defendants released that inmate from his cuffs. He also alleged that after this

attack, he had injuries and pain that went untreated. Even at the time of his *pro se* complaint, he was an inmate at Pontiac Correctional Center, and he alleged in his initial complaint that the extent of his injuries (and specifically the discovery that he had a broken leg) was not discovered until he was transferred to Pontiac Correctional Center.

2. After present counsel was appointed to his case, counsel filed his first amended complaint (Dckt. No. 19). That complaint formalized Mr. Taylor's initial complaint, raising claims that certain defendants violated his constitutional rights by failing to protect him from the attack by the fellow inmate at Stateville Correctional Center, and alleging that various defendants violated his constitutional rights by failing to provide him with medical care despite his injuries and ongoing pain. At the time he filed his first amended complaint he was also an inmate at Pontiac Correctional Center, and was also alleging that there were relevant factual issues relating to his time at Pontiac, including that his broken leg was not discovered until he was transferred to Pontiac.

3. Defendants did not seek to transfer venue to the Central District of Illinois after either of these complaints were filed.

4. On June 14, 2016, this Court granted Mr. Taylor's leave to file his second amended complaint (Dckt. No. 93). Mr. Taylor sought leave to amend his complaint to add in allegations related to the ongoing denial of medical care at Pontiac Correctional Center, claims he could not raise before because they had not been exhausted. (Dckt. No. 89 at 2). In granting Mr. Taylor leave to file, the Court allowed him to add in defendants from Pontiac Correctional Center and to add in allegations that these defendants had also denied him medical care in violation of his constitutional rights. Mr. Taylor argued before the Court at that time that venue over all of his claims was proper in the Northern District of Illinois (Dckt. No. 89 at 2-3). It was

only at this time that Defendants sought to transfer this case to the Northern District of Illinois or, alternatively, to sever Mr. Taylor's claims.

## ARGUMENT

**I.       The Northern District of Illinois Is A More Appropriate Venue for Defendants' Claims**

5.      In seeking to transfer venue to the Central District of Illinois pursuant to the doctrine of *forum non conveniens*, Defendants implicitly concede that venue over these claims is proper in the Northern District of Illinois. *Law Bulletin Publ'g Co. v. LRP Publs., Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) (transfer pursuant to this doctrine appropriate only when venue is proper in both the transferor and transferee districts). The Northern District is a proper venue for Mr. Taylor's claims. This is true for all the same reasons that Plaintiff relied on in seeking leave to file his complaint to add in claims related to Pontiac Correctional Center events (Dckt. No. 89) - venue should be considered expansively in order to promote judicial economy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). As Plaintiff has previously argued, under the doctrine of pendent venue, federal courts may exercise their discretion to hear claims as to which venue may be lacking if those claims arise out of a common nucleus of operative facts with claims as to which venue is proper. *See, e.g.*, *VMS/PCA Ltd. P'ship v. PCA Partners Ltd. P'ship*, 727 F. Supp. 1167, 1174 (N.D. Ill. 1989) (citing *Bartel v. F.A.A.*, 617 F. Supp. 190, 197 (D.D.C. 1985); *Beattie v. United States*, 756 F.2d 91, 100–02 (D.C. Cir. 1984)). By seeking relief under the *forum non conveniens* doctrine, Defendants are conceding that this Court is a proper venue for Defendants' claims, and this Court already ruled as much in granting

Mr. Taylor leave to file his second amended complaint adding in claims related to occurrences at Pontiac Correctional Center.

6. The only question, then, is whether the Central District is more appropriate. Defendants set out the test for a *forum non conveniens* motion correctly, but Defendants' motion is wrong on the facts. Defendants argue the Central District is more appropriate because (1) Mr. Taylor now resides in that district; (2) he has claims that his ongoing denial of medical care occurred in that district; (3) he spent more time at Pontiac Correctional Center than Stateville Correctional Center; and (4) most witness reside in the Central District. Plaintiff will address each of these factual contentions in turn.

**A. Time Mr. Taylor Spent at Stateville and Pontiac**

7. First, Plaintiff's complaint alleges that his was originally injured in June of 2013, and transferred to Pontiac in April of 2014. Mr. Taylor therefore spent a little under a year at Stateville during the time he alleges he was denied medical care, and a little over two years at Pontiac, to date, being denied medical care. It is simply not true, as Defendants contend, that his time at Stateville was brief. Moreover, Plaintiff raises a failure to protect claim against numerous defendants that relates only to his time at Stateville Correctional Center. The events of June 25, 2013, solely occurred at Stateville Correctional Center, and this is the key event that triggered everything that followed. All of the discovery about these events, including materials held at Stateville Correctional Center, witnesses who still reside or work there, and defendants who still work there, relates to the Northern District. Plaintiff admits that certain inmate witnesses to these events are no longer at Stateville and will need to be deposed at their current institutions, but those inmates are now in both the Southern and the Central District of Illinois. None of these facts support the transfer of this litigation to the Central District of Illinois.

### B. Where Mr. Taylor Was Denied Medical Care

8. Defendants argue that because Mr. Taylor currently resides in the Central District and alleges he is currently being denied medical care there, the Central District is the more appropriate district for this litigation. They cite *Ford v. Illinois Department of Corrections*, No. 14-cv-6242, 2014 U.S. Dist. LEXIS 167072 (N.D. Ill. Dec. 1, 2014) as supporting their position, claiming that case was transferred to the Southern District because the plaintiff currently resided there and was claiming the ongoing denial of medical care there (Mot. at 4-5). In fact, that case was transferred to the Southern District because the plaintiff had not alleged "any particular violation" during his time in the Northern District of Illinois, because no defendant resided in the Northern District, and because "no substantial part of the acts and omissions giving rise to [his] Complaint occurred in the Northern District." *Id.* at 3. This is nothing like Mr. Taylor's case, where multiple defendants do reside in the Northern District, where numerous acts and omissions giving rise to his failure to protect and his failure to provide medical care claims occurred at Stateville Correctional Center.

9. Plaintiff does not disagree that his recently-amended claims add in defendants and conduct that occurred at Pontiac Correctional Center, in the Central District. As he previously argued, however, the Central District of Illinois is no closer or more convenient for the resolution of those claims. This case would be transferred to the Peoria division of the Central District of Illinois. Stateville Correctional Center and the Peoria courthouse are 120 miles from one another, but Stateville to this courthouse is 36 miles. Pontiac Correctional Center and the Peoria courthouse are 70 miles from one another. Pontiac Correctional Center and this courthouse are 98 miles from one another. The distance in terms of travel are essentially the same for the defendants, but represent a significant hardship for Plaintiff's appointed counsel,

who is faced with travel to Peoria versus the Chicago courthouse. This factor does not favor transfer.

C. **Where the Parties, Witnesses and Sources of Proof in this Case Reside**

10. The Defendants admit that only six of the numerous defendants in this case are residents of the Central District, and that the rest are named because of their involvement with the Stateville aspect of this case (Dckt. No. 110 at 9). As for the witnesses, Plaintiff concedes, based on the discovery conducted to date, that the witnesses to the issues in his complaint reside in numerous places. The numerous witnesses related to the June 25, 2013 attack and to the denial of medical care at Stateville appear to reside primarily in the Northern District of Illinois, but Plaintiff concedes some inmates are elsewhere in the state. Witnesses to his treatment at Pontiac Correctional Center reside primarily in the Central District. And obviously the records of Stateville and Pontiac are in their respective institutions, but these records belong to Wexford, a party, or the Illinois Department of Corrections, a political subdivision that can as easily produce records to Plaintiff's counsel in either district.

11. Witnesses who are employees of the Illinois Department of Corrections or Wexford Health Services are witnesses who will presumably appear at trial regardless of its location (and who indeed may be compelled pursuant to Federal Rule of Civil Procedure 45 to attend). Defendants point to only one non-party witness who they identify as important who resides outside the Northern District of Illinois (Dckt. No. 110 at 8-9). The radiologist who concluded Mr. Taylor's leg was broken does appear to be a radiologist who resides in Bloomington, Illinois, in the Central District, but is someone who can be deposed in Bloomington and compelled to attend trial, if necessary, pursuant to Rule 45. If this case remains in the Northern District, then Plaintiff may have to bear the expense of producing this

person, even if he would have otherwise preferred to come to court closer to home. There is no authority for transferring litigation pursuant to the *forum non conveniens* doctrine simply because defendants can identify literally one non-party employee witness for whom the Central District of Illinois is more convenient. This factor does not favor transfer.

### D. This Case Belongs in the Northern District of Illinois

12. In this case, Plaintiff filed this case in the Northern District of Illinois because that is where his failure to protect claim arose and where the initial part of his denial of medical care claim took place. He added his claim related to the denial of medical care at Pontiac Correctional Center to this litigation in the interests of judicial economy. Plaintiff chose this forum for rational reasons and because this forum relates to his claims and the factual issues in this case. His choice should be respected and given strong deference. *See*, *e.g.*, *Hinc. v. Lime-O-Sol Co.*, 231 F. Supp.2d 795, 796 (N.D.Ill. 2002). Defendants have not provided compelling reasons to transfer this litigation, and this Court should deny their motion.

## II. This Court Should Not Sever Mr. Taylor's Claims

13. There is no reason to grant Defendants' alternative request to sever aspects of Mr. Taylor's claims. This Court already recognized as much in granting Mr. Taylor leave to file his second amended complaint. In this case, Plaintiff's claims as to Stateville and Pontiac Correctional Center both involve the same core questions – whether Plaintiff suffered an injury that originated at Stateville Correctional Center, and how that injury manifested and developed over time. How Plaintiff was treated at both institutions will be relevant to the claims involving each institution, as will the common policies and practices of the Illinois Department of Corrections and Wexford Health Services that impact both institutions. Judicial economy strongly suggests that these claims proceed together so that Plaintiff can coordinate discovery

7

strategy as to both cases, avoid duplicative court appearances and pleadings, and avoid potential inconsistent rulings in the two cases. Severing these claims would leave Plaintiff's counsel, who was appointed by the Court to this case, in the position of having to litigate two separate denial of medical care claims simultaneously in two separate districts.

14. Defendants can find only two obscure Rule 21 cases that even seemingly support their request in this case. Those cases rely on *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), a case in which the Seventh Circuit explained the need to prevent prisoners from filing multi-claim, multi-defendant lawsuits with "separate and discrete" claims that are designed to skirt the requirements of the Prison Litigation Reform Act. *Id.* at 607. The two cases Defendants cite are both cases in which *pro se* plaintiffs filed complicated, sprawling lawsuits that contained "separate and discrete" claims that were capable of resolution despite the outcome of the other claims. Defendants point out that in *Malik v. Rankin*, No. 15-cv-00084-SMY, 2015 U.S. Dist. LEXIS 15245 (S.D. Ill. Feb. 9, 2015) the Southern District of Illinois transferred some claims to the Central District of Illinois, but what they do no advise this Court is that the Southern District actually split the plaintiff's case into four separate lawsuits because the plaintiff had claimed "chronic, evolving conditions" at four separate prisons. *Id.* at *10. Likewise, in *Harris v. Dart*, No. 10-c-6666, 2010 U.S. Dist. LEXIS 132161, *2 (N.D. Ill. Dec. 14, 2010), the court took issue with a *pro se* plaintiff filing a complaint raising a laundry list of unrelated complaints about his treatment at the Cook County Jail. *George* itself involved a *pro se* plaintiff trying to bring 50 claims in a single suit. 507 F.3d at 607.

15. Mr. Taylor's case is nothing like these situations. He did not allege a "chronic, evolving condition" or a laundry list of unrelated complaints, but a very specific denial of medical care claim that continued when he left Stateville and went to Pontiac. He is represented

by counsel and is not seeking to avoid the requirements of the PLRA, but instead, for reasons of judicial economy, to litigate his denial of medical care claim and his failure to protect claim in the cleanest way possible. His claims are not truly capable of separate resolution, because they raise the same question of what his injuries were and how they manifest over time. There is no reason to sever his claims and require him to undertake simultaneous litigation of the same issue in two separate districts.

   WHEREFORE, for the above reasons, Plaintiff respectfully requests that this Court deny Defendants' motion.

Dated: August 1, 2016

                  Respectfully submitted,

                  /s/ Tara Thompson
                  Tara Thompson
                  Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Tara Thompson
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

   I, Tara Thompson, an attorney, hereby certify that on August 1, 2016, I caused to be served the foregoing Response to Defendants' Motion to Transfer Venue to all parties of record through the Court's CM/ECF system.

                   Respectfully Submitted,

                   /s/ Tara Thompson
                   Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Tara Thompson
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900